31 Cal.App.4th 441 (1994)
37 Cal. Rptr.2d 7
In re KATRINA W. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
TEAH W. et al., Defendants and Appellants.
Docket No. B067651.
Court of Appeals of California, Second District, Division One.
December 2, 1994.
*443 COUNSEL
Janette Freeman Cochran and Martin A. Becker, under appointments by the Court of Appeal, for Defendants and Appellants.
*444 De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, Jill Regal and Thomas D. Lyon for Plaintiff and Respondent.
OPINION
MASTERSON, J.
The juvenile court sustained a petition filed pursuant to Welfare and Institutions Code[1] section 300 and declared minors Katrina W. and Ryan W. (collectively the minors) to be dependents of the court. Teah W. (mother) and Timothy W. (father) appeal from an order entered following the ensuing disposition hearing. We affirm.

BACKGROUND
Viewed in the light most favorable to the order under review (In re Bernadette C. (1982) 127 Cal. App.3d 618, 624 [179 Cal. Rptr. 688]), the evidence presented at the hearing showed the following. Katrina was born on July 19, 1988, and Ryan was born on January 19, 1991, when Katrina was two and one-half years old. On January 20, 1991, mother and father returned from the hospital with Ryan. That night, Katrina sustained an injury to her vaginal area. Since the bleeding stopped, mother and father decided not to call the hospital until the following morning.
When mother called the hospital, she was advised that, since Katrina was not experiencing pain, there was no reason to take her to the hospital. Later that day, mother noticed blood spots on Katrina's underwear. Mother and father decided that mother should take Katrina to an urgent care facility while father babysat Ryan. The doctor who examined Katrina told mother that it appeared as though some form of sexual abuse had occurred. The doctor arranged for an appointment the following day with Dr. Paul Whyte, a psychologist. Dr. White interviewed Katrina, mother, and father. He concluded that Katrina had been sexually abused, and he reported the incident to the authorities.
Later that afternoon, Katrina, mother, and father were taken by members of the Los Angeles County Sheriff's Department to Dr. Craig Clark, a psychologist. Dr. Clark concluded that Katrina had been sexually abused by father.
Deputy Sheriff Carlos Marquez interviewed mother and father. Mother stated that she had been in the kitchen at the time of Katrina's injury. Father *445 stated that Katrina had been jumping on her bed when she fell on the floor. As father picked Katrina up from the floor, he noticed blood on his finger. He then corrected himself by saying, "no, no, no, on my hand."
On January 25, 1991, a petition was filed to declare the minors to be dependents of the court pursuant to section 300, subdivisions (b), (c), (d), (i), and (j).
On January 28, 1991, the court appointed county counsel to represent both the department of children's services (DCS) (which is now known as the department of children and family services) and the minors.
At an arraignment and detention hearing held on February 26, 1991, county counsel requested the court to appoint separate counsel for the minors. The court granted this request. At the same hearing, the court heard a motion to permit father to move back into the family home provided that he would never be left alone with the minors. In support of this motion, father's counsel submitted a document which contained, inter alia, a declaration by psychologist Stan Katz. Therein, Dr. Katz opined that father had not sexually abused Katrina. This opinion was based on his evaluation of father and Katrina during sessions arranged by father's counsel. No objection to the propriety of this evaluation had been raised at this hearing, and the court granted the motion to allow father to move back into the family home.
At a hearing conducted on July 23, 1991, father called Dr. Katz as a witness. Counsel for the minors objected since, inter alia, as the minors' attorney, he had to give his permission before father and mother had Katrina examined. Father and mother responded that any objection had been waived by failing to raise the issue at the February 26, 1991, hearing. The court sustained the objection and excluded Dr. Katz's testimony insofar as it pertained to his examination of Katrina.
After these portions of Dr. Katz's testimony had been stricken, mother called Dr. Kerry English, director of child development at King Medical Center. Dr. English opined that Katrina's injury was consistent with the version of events advanced by mother and father.
On October 2, 1991, the court sustained the following amended petition:
"Count I: On or about Jan. 20, 1991, minor Katrina's father sexually abused minor, including but not limited to digital penetration causing a cut and bruises inside the vaginal area. Further, minor's mother does not believe *446 these allegations. Said molestation to minor Katrina endangers minor Ryan's physical and emotional health and safety.
"Paragraph I subdivision B: The minors have suffered, and there is a substantial risk that the minors will suffer, serious physical harm or illness as a result of the failure or inability of their father to adequately supervise or protect the minors and the failure of the minors' mother to believe the allegations[.] The facts set forth in count I above are hereby incorporated and made part hereof.
"Paragraph III subdivision D: The minor Katrina has been sexually abused, and there is a substantial risk that the minors will be sexually abused, as defined in section 11165.1 of the Penal Code by their father and the mother, fails to believe the allegations that minor Katrina was sexually abused[.] The facts set forth in count I above are hereby incorporated and made part hereof.
"Paragraph IV subdivision I: The minor Katrina has been subjected to an act or acts of cruelty by the minor's father and the facts set forth in count I above are hereby incorporated and made part hereof.
"Paragraph V subdivision J: The minor's sibling Katrina has been abused or neglected, as defined in subdivision[s] (b), (d), and (i), and there is a substantial risk that the minor Ryan will be abused or neglected, as defined in those subdivisions for the following reasons: The facts set forth in count I above are hereby incorporated and made part hereof."

ISSUES
On appeal, mother and father contend that (1) the court's finding that mother "does not believe minor Katrina was molested" does not support section 300 jurisdiction over mother; (2) the court's findings are not supported by substantial evidence; (3) the court should have permitted Dr. Katz to testify concerning his evaluation of Katrina; (4) county counsel should not have been permitted to continue to represent DCS after it had been relieved of its representation of the minors; and (5) separate counsel should have been appointed for each of the minors.

DISCUSSION

1. Jurisdiction Over Mother

(1) Relying on In re Alexander K. (1993) 14 Cal. App.4th 549 [18 Cal. Rptr.2d 22], mother and father contend that the court's finding that *447 mother "does not believe minor Katrina was molested" does not support section 300 jurisdiction over mother. Such reliance is misplaced. In Alexander K., a petition under section 300, subdivision (c), had been sustained based on the emotional abuse suffered by the minor on account of the father. The Alexander K. court reversed because there was no evidence linking the child's symptoms to the father's conduct. Here, on the other hand, there was proof that Katrina had been physically assaulted by father. Yet, mother adamantly refused to believe that father had done anything wrong. Since the court's dispositional order allows father to resume his living arrangements with mother and the minors, mother's disbelief that anything improper had occurred places Katrina at risk that her need to heal from the past abuse and any reports of future abuse might be ignored by mother. Thus, mother's past conduct indeed plays a part in the risk of future harm to Katrina.

2. Sufficiency of the Evidence

(2) Mother and father argue that the court's findings are not supported by substantial evidence. However, their argument is nothing more than an attack on the qualifications of, and the basis for the opinions expressed by, the expert witnesses who testified against them. It is not within the province of an appellate court to reweigh either the qualifications or the credibility of the expert witnesses. (In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1132 [200 Cal. Rptr. 789], disapproved on other grounds in People v. Raley (1992) 2 Cal.4th 870, 893 [8 Cal. Rptr.2d 678, 830 P.2d 712].)

3. Dr. Katz's Testimony

(3) Mother and father next contend that the court erroneously excluded Dr. Katz's testimony concerning his evaluation of Katrina. Their contention is premised on the supposed waiver of the attorney-client privilege by counsel for the minors. Such waiver is gleaned from counsel's failure to object at the February 26, 1991, hearing after being shown Dr. Katz's declaration which plainly stated that he had interviewed Katrina.
First, the circumstances of the hearing need to be placed in proper perspective. Dr. Katz's declaration was presented as part of father's motion to be permitted to move back into the family home. Immediately before this motion had been considered, county counsel had been relieved from representation of the minors. Attorney Morrow had just been substituted in to take over the minors' representation. Morrow did not raise an objection to Dr. Katz's declaration. Given the circumstances, it is understandable that a newly appointed attorney would not have objected immediately to this declaration.
*448 More importantly, the court's ruling was premised on a violation of rule 2-100 of the Rules of Professional Conduct. That rule prohibits an attorney or an agent from contacting a person who is known to be represented without first obtaining the permission of the opposing attorney. "Rule 2-100 does not define the scope of the attorney-client privilege; rather, it bars ex parte communications with opposing parties regardless of whether the information sought, obtained or conveyed is privileged from disclosure." (Triple A Machine Shop, Inc. v. State of California (1989) 213 Cal. App.3d 131, 140-141 [261 Cal. Rptr. 493].) Thus, regardless of whether the minors failed to timely invoke the attorney-client privilege, they were still entitled to the protection of rule 2-100.

4. County Counsel's Continued Representation of DCS

(4) As noted, on January 28, 1991, the court appointed county counsel to represent both DCS and the minors. One month later, at the next hearing, county counsel informed the court that, "based on new information that's come forth today, I would believe that it would be in the minors' best interest to be represented by separate counsel, although I don't exactly see a conflict, and I haven't received any confidential matters from the minors." No one objected to the request or otherwise challenged county counsel's statements. The court appointed new counsel to represent the minors.
For the first time on appeal, mother and father argue that once county counsel had been relieved of representing the minors, it should not have been permitted to continue to represent DCS. This argument is without merit.
Rule 3-310 of the Rules of Professional Conduct prohibits an attorney from representing a client whose interests conflict with that of a former client unless the attorney obtains the informed written consent of the former client. Rule 3-310 does not assist mother and father.
First, no objection to county counsel's continued representation of DCS was made below. Accordingly, any objection had been waived. (White v. Superior Court (1979) 98 Cal. App.3d 51, 55-56 [159 Cal. Rptr. 278].)
Second, county counsel's statements to the court that no confidential matter had been obtained during the one-month period of representation of the minors were never challenged. Since no confidential matter had been obtained, there could be no prejudice to the minors from county counsel's continued representation of DCS. (In re Jessica B. (1989) 207 Cal. App.3d 504 [254 Cal. Rptr. 883].)
*449 Accordingly, we conclude that the court did not err by allowing county counsel to continue representing DCS after it had been relieved of its representation of the minors.

5. Separate Counsel

(5) Mother and father assert that each of the minors should have had a separate attorney. We disagree. The record before us does not allow for even an "informed speculation" (People v. Cook (1975) 13 Cal.3d 663, 670 [119 Cal. Rptr. 500, 532 P.2d 148]) that either an actual (In re Richard H. (1991) 234 Cal. App.3d 1351, 1367 [285 Cal. Rptr. 917]) or a potential (In re Elizabeth M. (1991) 232 Cal. App.3d 553, 566 [283 Cal. Rptr. 483]) conflict of interest existed between the minors. Accordingly, the court did not err by appointing the same attorney to represent both minors.

DISPOSITION
The order under review is affirmed.
Spencer, P.J., and Ortega, J., concurred.
NOTES
[1] Unless otherwise stated, all statutory references shall be to the Welfare and Institutions Code.