[No. B235755. Second Dist., Div. One. Aug. 30, 2012.]

In re D.G. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Respondent, v.
R.G. et al., Appellants.

COUNSEL

Eva E. Chick, under appointment by the Court of Appeal, for Appellant R.G.

Jack A. Love, under appointment by the Court of Appeal, for Appellant E.C.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Respondent.

## OPINION

CHANEY, J.—R.G. (Mother) and E.C. (Father) appeal from juvenile court jurisdictional and dispositional orders as to minors D.G. and L.C. stemming from Father's attempts to solicit sex from D.G. They contend that Father's solicitation of sex from one of the children neither constituted abuse of that child nor placed either child at risk of harm. We conclude substantial evidence supports the orders as to both children and affirm.

## BACKGROUND

The dependency petition involves Mother, her two daughters, then 16-year-old D.G. and 11-year-old L.C., and Father, who has lived with Mother off and on since D.G. was two years old. He is the Father of L.C. but not D.G.

*The 2007 Petition*

In 2007, when D.G. was 12 and L.C. was seven, it was reported that Father had struck the elder child several times with a belt, causing her to sustain

welts, and had sexually abused her, including by soliciting sex from her. The Los Angeles County Department of Children and Family Services (DCFS or the department) conducted interviews to substantiate the allegations and filed a dependency petition. Father was arrested.

Upon being released on bail, Father returned to the home and screamed at and threatened D.G. for having made a police report against him, causing the babysitter to flee the house with D.G., L.C. and a third sibling. When a social worker interviewed the children later that evening, they all confirmed that Father had hit D.G. with a belt, and the social worker observed for himself that the child had belt marks on her arm. D.G. also reported Father had offered to buy her anything she wanted if she would have sex with him. Mother stated she had never observed Father hitting any of the children with a belt and struggled with believing that D.G. was actually sexually abused by Father. She expressed to DCFS that she had trouble affording a home and necessities of life for the children without Father's financial support.

The children were initially released to Mother's home but were removed when Mother blamed D.G. for the family's involvement with DCFS and evicted her from the house until she agreed that Father too could return home. The children were returned to Mother after she obtained a three-year restraining order against Father.

The juvenile court ultimately found that Father had physically and sexually abused D.G. and that Mother had failed to protect her, which placed not only D.G. at risk but also L.C. The court sustained allegations that Father "repeatedly struck [D.G.] with a belt and inflicted marks and bruises to [her] arm. Such punishment was excessive and caused [D.G.] unreasonable pain and suffering. Such abusive conduct by [Father] endangers the child's physical and emotional health and safety and places the child's sibling, [L.C.], at risk of similar abuse." The court also found that "In or about January 2007 and prior occasions, [Father] inappropriately sexually interacted with the child. [Father] asked the child to have sexual relations with him on at least two occasions, resulting in the child feeling sexually threatened. Further, since [D.G.'s] disclosure of the incidents of [Father] inappropriately sexually interacting with her, the mother has repeatedly placed blame on the child . . . and has inappropriately cursed at the child for making such a disclosure. Mother's failure to believe [D.G.] and mother's inappropriate blaming of the child places [D.G.] at risk of further inappropriate sexual interactions by [Father], and endangers the child's physical and emotional health and safety. Such sexually inappropriate conduct by [Father] and the child's mother's failure to take appropriate protective action endangers the

child's physical and emotional health and safety and places the child's sibling, [L.C.], at risk of similar endangerment."

The dependency case was closed in June 2008. Mother was given sole legal and physical custody of D.G. and both parents were awarded joint legal and physical custody of L.C., Father to have reasonable unmonitored visits with L.C. and no visitation with D.G. Mother had obtained a three-year restraining order pursuant to which Father was to stay away from D.G., but after the dependency case was closed he moved back into the family home where D.G., too, resided.

*Events Between 2009 and January 2011*

In 2009, D.G. was arrested for hitting Father during an altercation arising from her staying out late at a party. She reported to her probation officer that Father continued to sexually abuse her and admitted that she sometimes physically fought with Mother. Family members confirmed that Mother was having ongoing problems with D.G.'s behavior, as the child would leave home without permission and sometimes physically attack Mother. She also once threatened to overdose on pills. In November 2010, D.G. told school staff that Father had offered her $500 in exchange for oral sex. When interviewed, she recanted the allegation, stating she had made it in anger, and had merely recounted an event that had occurred in 2007. She stated Father had not made any recent sexual advances to her.

On January 25, 2011, a child protective hotline received a referral alleging that D.G. had disclosed to her dance teacher that in November 2010 Father offered her $500 in exchange for oral sex. When she told Mother about the incident, Mother responded that the devil was attempting to get into their house, and they should pray about it.

D.G. reported to a social worker that Father had been sexually molesting her since she was a little girl. He would make her watch pornographic movies with him and would have her do to him the things she saw on television. Father asked her to have oral sex with him, touched her breast and bottom, and put his fingers in her vagina, which hurt. She was afraid to tell anyone because she did not want herself and L.C. to be put in foster care.

L.C. reported that she never witnessed Father touch D.G. inappropriately.

Mother admitted that D.G. had told her that Father offered her money for sex but believed she made up the allegations, partly because Father had little

money to offer and partly because D.G. had a history of calling social workers and making up allegations of sexual abuse when Mother or Father restricted her activities. When Mother confronted Father about D.G.'s allegations, he denied them. Then D.G. asked that she drop the matter, and she did so. She did not believe what D.G. said about Father or that anything was happening between them.

Father denied offering D.G. money for sex. He claimed she made up the stories about him in retaliation for his restricting the places she could go and people she could meet, and anytime she could not do what she wanted, she would lie.

*The 2011 Petition*

On January 31, 2011, DCFS filed a petition pursuant to Welfare and Institutions Code section 300,[1] alleging D.G. had been sexually abused by Father within the meaning of subdivision (d) of that section and was at substantial risk of suffering serious physical harm or illness pursuant to subdivision (b) [failure to protect]. The petition also alleged there was substantial risk that L.C. would be abused or neglected as well (§ 300, subd. (j) [abuse of sibling]). The petition indicated the minors were currently residing with a maternal aunt.

At the detention hearing the juvenile court ordered that the children could be returned to Mother's home so long as Father no longer resided there. Mother agreed to the condition, and the children were returned after Father moved out.

At the adjudication hearing, D.G. testified that Father offered her money for sexual favors on three occasions from October to December 2010, one time offering $500 if she would let him perform oral sex on her. He also told her that if she had sex with him he would buy her a car. She rejected the offers. When asked if she thought he was serious about them, she replied, "kind of," but said he had never touched her and she was not afraid he would try to have sex with her. She told Mother twice about the offers, but Mother did nothing about them.

L.C. testified she heard D.G. tell Mother about Father's solicitation of sex. Mother testified that she was made "very upset" by D.G.'s allegations and spoke with Father about them, but he told her he never offered money

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

to D.G. for sex. She testified she "told him that it would be no reason why would he [make the offer]. And he told me, no, he did not, and I said okay, and I understand that you wouldn't have said something like [that]." However, she also testified that she believed D.G.'s allegations, but Father told her not to tell anyone because it was "not something that's important." She did not ask Father to leave the home because D.G. told her "there was nothing happening, that nothing had happened." (Mother's testimony was frequently inconsistent and nonresponsive.) If the judge allowed it, she would let Father back into the house because, she said, "I do need the help. Right now I'm almost evicted and who's going to help me."

Finding D.G.'s testimony to be "very credible," the juvenile court stated she "was extremely detailed and consistent in her answers. She outlined sexual acts that [were] solicited by [Father] . . . indicating oral sex in exchange for money or other offers for sex or oral copulation [in] exchange for a car . . . ." The court found Father had solicited oral sex from D.G. on numerous occasions. Mother knew or should have known of the solicitation but failed to take any action to protect D.G. and allowed Father to reside in the child's home with unlimited access to her. The ongoing inappropriate solicitation of sexual acts and Mother's failure to take action to protect D.G. endangered her physical and emotional health and also placed L.C. at risk of physical and emotional harm. The court declared D.G. and L.C. to be dependents of the court under subdivisions (b), (d) and (j) of section 300 and ordered that they be placed with Mother. Mother was ordered to participate in conjoint counseling with D.G. and to participate in individual counseling to address issues regarding sexual abuse awareness. The court ordered that there be no contact between Father and D.G. and that Father's visitation with L.C. be monitored.

Mother and Father timely appealed.

## DISCUSSION

Mother and Father challenge the sufficiency of the evidence supporting the juvenile court's jurisdictional and dispositional findings. The juvenile court found jurisdiction over the children under section 300, subdivisions (b), (d), and (j), and ordered Father removed from the home, based on its finding that Father sexually abused D.G. and Mother knew or should have known of the abuse, is in denial regarding it, and failed to protect the child.

I. *Substantial Evidence Supported the Jurisdictional Order*

Section 300, subdivision (b) states in relevant part that jurisdiction over a child arises when "[t]he child has suffered, or there is a substantial risk

that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Section 300, subdivision (d) states in relevant part that jurisdiction over a child arises when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by his or her parent . . . or the parent . . . has failed to adequately protect the child from sexual abuse when the parent . . . knew or reasonably should have known that the child was in danger of sexual abuse." Section 300, subdivision (j) provides that jurisdiction over a child arises when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent . . . and any other factors the court considers probative in determining whether there is a substantial risk to the child."

To affirm the juvenile court's exercise of jurisdiction over the children there must be substantial evidence that (1) Father sexually molested D.G.; (2) Mother denies that the abuse occurred; and (3) Father's abuse and Mother's denial place both D.G. and L.C. at risk of harm. " 'The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]' [Citation.] 'In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]' [Citation.]" (*In re E.B.* (2010) 184 Cal.App.4th 568, 574–575 [109 Cal.Rptr.3d 1].)

### A. *Father sexually abused D.G.*

The juvenile court found that "On numerous prior occasions, . . . [Father] inappropriately solicited sexual acts from [D.G.] by offering the child money to allow [Father] to orally copulate the child's vagina. [¶] [Father] asked the child to engage in oral sex with [him]." Mother "knew or should have known . . . of the inappropriate solicitation of sexual acts . . . and failed to take action to protect the child." Mother "allowed [Father] to reside in the child's home and allowed [him] to have unlimited access to the child. The ongoing inappropriate solicitation of sexual acts . . . and the Mother's failure to take action to protect the child endangers the child's physical and emotional health and safety and places the child and the child's sibling . . . at risk o[f] physical and emotional harm."

Mother and Father do not dispute that substantial evidence supports the juvenile court's conclusion that these incidents occurred. They argue that as a matter of law Father's solicitation of oral sex from D.G. did not constitute sexual abuse pursuant to section 300, subdivision (d). We disagree.

■ Section 300, subdivision (d) states in relevant part that jurisdiction over a child arises when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code . . . ." Penal Code section 11165.1 defines "sexual abuse" to include any act that violates subdivision (a) of Penal Code section 288 (lewd or lascivious acts upon a child) or Penal Code section 647.6 (annoying or molesting a child). Subdivision (a) of Penal Code section 288 makes it a felony to commit a lewd or lascivious act "upon or with the body" of a child under the age of 14 years with the intent of gratifying the perpetrator's passions. Subdivision (a) of Penal Code section 647.6 makes it a misdemeanor to "annoy[]" or "molest[]" a child under 18 years of age.

The words "annoy" and "molest" are synonymous and "refer to conduct designed 'to disturb or irritate, esp[ecially] by continued or repeated acts' or 'to offend' [citation]; and as used in this statute, they ordinarily relate to 'offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender.' [Citation.] [¶] Ordinarily, the annoyance or molestation which is forbidden is 'not concerned with the state of mind of the child' but it is 'the objectionable acts of defendant which constitute the offense,' and if his conduct is 'so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would "annoy or molest" within the purview of' the statute. [Citation.]" (*People v. Carskaddon* (1957) 49 Cal.2d 423, 426 [318 P.2d 4].) The primary purpose of section 647.6 "is the 'protection of children from interference by sexual offenders . . . .' [Citations.]" (*Carskaddon*, at pp. 425–426.) "The deciding factor for purposes of a Penal Code 647.6 charge is that the defendant has engaged in offensive or annoying sexually motivated *conduct* which invades a child's privacy and security, conduct which the government has a substantial interest in preventing . . . ." (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1752 [37 Cal.Rptr.2d 327].) "[T]here can be no normal sexual interest in any child and it is the sexual interest in the child that is the focus of the statute's intent." (*People v. Shaw* (2009) 177 Cal.App.4th 92, 103 [99 Cal.Rptr.3d 112], italics omitted.)

In *People v. Carskaddon* (1959) 170 Cal.App.2d 45, 46 [338 P.2d 201], the court held that the predecessor of Penal Code section 647.6 was violated by a defendant's asking a 17-year-old girl, who was a stranger to him, "extremely lewd and obscene questions" with respect to whether "she had ever had certain unnatural acts performed upon her." In *People v. La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729], the court held that the predecessor to

section 647.6 was violated by a defendant who offered to pay a 13-year-old boy if the boy would permit the defendant to perform oral sex on him. (*Id.* at pp. 179–180, disapproved on another ground as stated in *People v. Lopez* (1998) 19 Cal.4th 282, 292 [79 Cal.Rptr.2d 195, 965 P.2d 713].)

**(3)** Here, Father's repeated acts of offering D.G. money and a car for oral sex was conduct that evidenced his abnormal sexual motivation and would irritate a normal child and invade her privacy and security. The solicitation would "annoy[] or molest[]" a child within the meaning of Penal Code section 647.6, constitute sexual abuse under Penal Code section 11165.1, and support the juvenile court's finding that D.G. was described by subdivision (d) of Welfare and Institutions Code section 300.

▮ Mother and Father argue that to fall within subdivision (d) of section 300 the purported act of sex abuse must include some sort of offensive touching. The argument is without merit. "The law is well settled that there need not be an actual contact by a defendant with any part of the body of the victim in order for a defendant's acts to constitute the crime of an annoyance or a molestation of a child under 18 as required by [Penal Code] section 647a [(the predecessor to Pen. Code, § 647.6)]. Words alone may constitute the annoyance or molestation proscribed by Penal Code section 647a. '[The] touching of the body is not necessarily required. [Citation.]' [Citation.]" (*People v. La Fontaine, supra,* 79 Cal.App.3d at p. 185 [at no time did the defendant touch or make any movement toward the minor's body]; *People v. Lopez, supra,* 19 Cal.4th at p. 289 ["In contrast to section 288, subdivision (a), section 647.6, subdivision (a), does not require a touching . . . ."]; *People v. Memro* (1995) 11 Cal.4th 786, 871 [47 Cal.Rptr.2d 219, 905 P.2d 1305] [same], abrogated on another ground as stated in *People v. McKinnon* (2011) 52 Cal.4th 610, 639, fn. 18 [130 Cal.Rptr.3d 590, 259 P.3d 1186]; *People v. Levesque* (1995) 35 Cal.App.4th 530, 539 [41 Cal.Rptr.2d 439].)

B. *Mother denied that Father sexually abused D.G.*

Mother and Father do not dispute that substantial evidence supports the trial court's conclusion that Mother denied Father solicited sex from D.G. Although Mother's testimony was equivocal on the issue, she at times admitted she did not believe D.G. And D.G. testified that Mother professed not to believe her and refused to do anything about her allegations until after the children were removed from the home by DCFS.

C. *Father's conduct and Mother's denial placed D.G. and L.C. at risk of physical harm under section 300, subdivisions (b), (d) and (j)*

There is substantial evidence that Father's conduct and Mother's denial places both D.G. and L.C. at risk of physical harm under section 300,

subdivisions (b), (d), and (j). The younger daughter, L.C., is now close to the age that D.G. was when Father started molesting her. The record contains no promise by Mother that she would not permit Father to have unmonitored visits with either D.G. or L.C. or resume living in the same home with them. These factors support the juvenile court's finding of jurisdiction under section 300, subdivisions (b), (d), and (j) based on a substantial risk that the girls will suffer serious physical harm as a result of the failure or inability of Mother to adequately protect them. (See *In re Katrina W.* (1994) 31 Cal.App.4th 441, 447 [37 Cal.Rptr.2d 7] [substantial evidence supported juvenile court's finding of jurisdiction over two-and-one-half-year-old daughter and infant son under § 300, subds. (b), (d), (i), and (j) where Father sexually molested daughter and Mother was in denial of molestation].)

Mother and Father argue no evidence supports the juvenile court's conclusion that the minors are at risk of physical harm because Father did not physically harm D.G., he merely asked her for sex, and he did nothing inappropriate to L.C.

The argument is meritless. This family's record with DCFS indicates Father is persistent. He was found to have solicited sex from D.G., then 12 years old, on at least two occasions in 2007, was arrested in connection with the allegations, and was temporarily removed from the home. D.G. reported he continued to solicit sex after the prior dependency case was closed. Further, she testified she sometimes physically fought with him and with Mother, and she once threatened to overdose on pills. Father's persistent sexual interest in this young girl despite repeated rebuffs, arrest, and removal from the home would cause any reasonable person to conclude not only that a substantial risk exists that he will escalate from verbal to physical molestation, but also that the family's pattern of physical violence will continue and that D.G. may act on her threat to harm herself. And although L.C., now 11, has not been molested, she is reaching the age D.G. was at when Father began molesting her, and the juvenile court reasonably concluded a substantial risk existed that Father's aberrant sexual interests would extend to both young girls residing with him, not just one.

## II. *Substantial Evidence Supported the Dispositional Order*

Mother and Father contend the juvenile court's order removing Father from the home was unsupported by sufficient evidence. We disagree.

"After the juvenile court has assumed jurisdiction under section 355 by finding the child is a person described by section 300, the court is required to hear evidence on the question of the proper disposition to be made of the child. (§ 358, subd. (a).) At the disposition hearing the court may enter an

order ranging from dismissal of the petition [citations] to declaring dependency, removing physical custody from the parents and making a general placement order for the child [citations]." (*In re Summer H.* (2006) 139 Cal.App.4th 1315, 1324 [43 Cal.Rptr.3d 682].)

■ "Section 361, subdivision (c) provides that a child may not be removed from the parent's physical custody during dependency proceedings, except for a temporary detention period, unless clear and convincing evidence supports a ground for removal specified by the Legislature. Removal on any ground not involving parental consent, abandonment or institutionalization requires a finding, by clear and convincing evidence, there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child if the child were returned home, and there are no reasonable means of protecting the child without depriving the parent of custody." (*In re V.F.* (2007) 157 Cal.App.4th 962, 969, fn. 5 [69 Cal.Rptr.3d 159].)

We review a dispositional order removing a child from parental custody for substantial evidence. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529 [14 Cal.Rptr.3d 496].)

Substantial evidence supports the juvenile court's findings that allowing Father to remain in the family home posed a substantial danger to the health and safety of both D.G. and L.C. and there were no reasonable means of protecting the children without removal from Father's custody. The juvenile court found credible D.G.'s testimony and statements to social workers that Father persistently asked her for sex and Mother could not or would not do anything about it. The court reasonably inferred that Mother was unwilling to protect the children from Father. Thus, substantial evidence supports the finding that his presence in the home posed a substantial danger to their health and safety.

Substantial evidence also supports the juvenile court's finding that there were no reasonable lesser means of protecting the children without removing Father from the home. As noted by the juvenile court, Mother continued to deny any sexual abuse of D.G. had occurred and failed to take responsibility for the problem. The court thus could have reasonably concluded that measures short of removal would not protect the children from future abuse.

Mother and Father do not argue the contrary, but merely reiterate their argument that Father's verbal solicitation of sex from D.G. did not place her in physical danger or place L.C. in any kind of danger. Pursuant to the discussion above, the argument is rejected.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

Rothschild, Acting P. J., and Johnson, J., concurred.