Filed 5/5/15  In re Olivia P. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Olivia P., a Person Coming Under the Juvenile Court Law. | B256881 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>FRANCISCO P.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK04665) |

        APPEAL from orders of the Superior Court of Los Angeles County.  Steven Klaif, Juvenile Court Referee.  Affirmed.

        Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

        Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Francisco P., Jr. (father) appeals from part of the order adjudicating his daughter Olivia P. a dependent of the court, and from part of the dispositional order. Olivia was declared dependent on several bases; father challenges only the jurisdictional finding that she was dependent due to a risk of sexual abuse because of father's inappropriate behavior with his stepdaughter, Alyssa R., and the concomitant dispositional order that father's individual counseling include sexual boundary issues. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family unit at issue consisted of mother, Jennifer P. (mother), father, five-year-old Olivia, and mother's two daughters from a previous relationship, 13-year-old Katelynn R. and 11-year-old Alyssa R. Prior to the detention of the children in April 2014, there had been a series of abuse referrals dating back to 2007, although, for various reasons, no petitions had been filed by the Los Angeles County Department of Children and Family Services (DCFS).

In January 2014, Katelynn and Alyssa telephoned their father, Gabriel R., who had joint custody, and asked him to pick them up because they did not feel safe at home, due to mother's and father's drug use and neglect. Gabriel R. obtained a family court order for emergency physical custody of his daughters, and suspension of mother's visitation.

In April 2014, there was a physical altercation between mother and father, in which father kicked mother and slammed her to the ground. Mother left the room, but could not take Olivia because father would not allow her to leave with the child. Mother left and called police. DCFS conducted an investigation and detained all three children from mother and father. Katelynn and Alyssa remained with Gabriel R.; Olivia was placed with her paternal grandmother.

DCFS's investigation revealed some disturbing sexual behavior by father toward Alyssa. There were two types of incidents. First, on multiple occasions, father peeked at Alyssa while she was showering. Second, on at least two occasions, father went into Alyssa's room and lay down in bed beside her. On one of these instances, Alyssa was wearing only a bra and underwear.

2

On April 22, 2014, DCFS filed a petition alleging that Katelynn, Alyssa and Olivia were dependents under Welfare and Institutions Code section 300 subdivisions (a) (violent altercations between the parents in front of the children put them at risk of physical harm); (b) (the children were at risk due to the physical altercations, mother's drug abuse, father's alcohol abuse, and father's sexual abuse of Alyssa); (d) (father's sexual abuse of Alyssa put all three girls at risk of sexual abuse); and (j) (father's sexual abuse of Alyssa put her sisters at risk of sexual abuse).[1]

The case proceeded to a jurisdiction/disposition hearing. No testimony was offered; the sole evidence consisted of the DCFS social worker's reports. Mother and father submitted on the record with respect to the allegations of domestic violence, drug abuse, and alcohol abuse. They disputed only the allegations of sexual abuse, and argued that the evidence was insufficient to show father's conduct toward Alyssa had an improper sexual motivation. The trial court concluded, by a preponderance of the evidence, that father's conduct had, in fact, been sexually motivated. The court found the petition, including the allegations pertaining to sexual abuse, to be true. Therefore, at disposition, when the court ordered reunification services for both parents, father's counseling was to include sexual boundaries and mother's counseling was to include sexual boundary awareness.

Father appeals. On appeal, he does not challenge the dependency court's finding that Olivia was dependent. He argues only that she should not have been found dependent due to his alleged sexual abuse of Alyssa. He makes no argument that sexual abuse of Alyssa would not put Olivia at risk of sexual abuse; nor does he argue that the alleged abusive behavior was not the type of conduct that, with the appropriate mental state, could support a finding of sexual abuse. He challenges only the sufficiency of the

---

[1]     The petition also contained allegations that mother and father engaged in sexual activity in the children's presence, and that father watched pornography on the family mobile phone. These allegations, and some allegations regarding specific incidents of domestic violence, were ultimately dismissed by stipulation.

evidence of his mental state, arguing that there is insufficient evidence that his acts were motivated by an unnatural sexual interest in Alyssa.

**DISCUSSION**

1.      *The Issue Is Properly Before This Court*

Preliminarily, DCFS argues that, as there were multiple grounds for jurisdiction over Olivia, and father does not challenge all of them, we need not address father's appeal of one of several jurisdictional bases.  We disagree.  While we could affirm the jurisdictional finding based on domestic violence, drug abuse, and alcohol abuse, appellate courts will generally exercise discretion to consider a challenge to any specific jurisdictional finding when (1) the finding serves as the basis for dispositional orders challenged on appeal or (2) could be prejudicial to the appellant or could potentially impact current or future dependency proceedings.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)  That standard is met here.  The challenged sex abuse finding is the basis for the sexual boundary counseling order father also contests.  Moreover, a finding in a dependency proceeding that a parent committed an act of sexual abuse constitutes prima facie evidence in future dependency proceedings.  (Welf. & Inst. Code, § 355.1, subd. (d).)  We therefore exercise our discretion to consider father's appeal on the merits.

2.      *There Is Substantial Evidence of Father's Sexual Motivation*

Welfare and Institutions Code section 300, subdivision (d) provides for jurisdiction when the child "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code . . . ."  In turn, Penal Code section 11165.1 defines "sexual abuse" to include "sexual assault" and "sexual exploitation."  Sexual assault means conduct in violation of one of several itemized statutes, including Penal Code section 647.6, which prohibits child molestation.

4

DCFS argues that father's conduct toward Alyssa constituted child molestation within the meaning of Penal Code section 647.6 (section 647.6). That section is violated by conduct "that would unhesitatingly irritate a normal person" which was " ' " ' "motivated by an unnatural or abnormal sexual interest" ' " ' " in the victim. (*In re R.C.* (2011) 196 Cal.App.4th 741, 750.) As there can be no normal sexual interest in a child, *any* sexual interest in the child is sufficient to establish the motive necessary for a violation of section 647.6. (*People v. Brandao* (2012) 203 Cal.App.4th 436, 441.) In determining whether father's conduct was sexually motivated, all circumstances are taken into account, including the nature and manner of the activity. (*In re R.C.,* at p. 750.) While the child's opinion may not directly address the issue of whether the conduct would unhesitatingly irritate a normal person (*In re D.G.* (2012) 208 Cal.App.4th 1562, 1571), the child's discomfort and belief that the conduct was sexually motivated can be relevant to determining whether the perpetrator acted with sexual motivation. (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 441.)

A juvenile court makes its findings that children are described by Welfare and Institutions Code section 300 by a preponderance of the evidence. (Welf. & Inst. Code, § 355, subd. (a).) We will uphold the juvenile court's finding that the children were so described if it is supported by substantial evidence. (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135.) We do not reweigh the evidence or resolve evidentiary conflicts, nor do we reevaluate witness credibility. We draw all legitimate and reasonable inferences in support of the judgment. (*Id*. at pp. 135-136.)

In this case, father does not challenge the first element, that his conduct would unhesitatingly irritate a normal person. He contends, however, that the evidence is insufficient that his conduct was motivated by a sexual interest in Alyssa. He argues, instead, that innocent explanations are available: he opened the shower curtain only to

5

look for soap; he got in bed with Alyssa only because he and mother had fought and Alyssa slept alone in a queen-sized bed.[2]

While father's explanations may be theoretically plausible, that is not the test.  We look only to see if substantial evidence supports a contrary conclusion.  The evidence supporting this conclusion is substantial.  It appears that Alyssa made multiple attempts to report father's inappropriate behavior, but, when she did, mother punished Alyssa and told the girls to lie about it.  As early as March 2012, Alyssa reported that father got drunk "a lot and when he comes home he jumps in bed with" her.  Sometime in 2013, due to Alyssa's perceived reticence to discuss the issues, her stepmother suggested that Alyssa write down what had happened.  Alyssa wrote a letter to her family, in which she stated:  (1)  once, father had lain down next to her in bed when she was wearing only her bra and underwear; (2)  on another occasion, he came into her room to sleep with her after a fight with mother; (3)  once, he came into the bathroom when she was showering behind a see-through curtain, and he refused to leave; (4)  when she is in the shower, he opens and closes the shower curtain quickly; and (5)  one time, when she was in the shower, she needed soap so she took the soap from the sink; father peeked in the shower to check if there was another soap in the shower, which made her "feel like he just wanted to look at [her]."  Father told her "from now on I'm going to make sure you do everything you say you're going to do."  When interviewed by a DCFS social worker in April 2014, Alyssa stated that she felt threatened by father telling her that he did what he did in order to check up on what she was doing in the bathroom.  When she spoke to a DCFS investigator in May 2014, Alyssa minimized the number of improper incidents, but

---

**2**  We say that father argues that innocent explanations are available, because father, in large part, denied that the conduct occurred at all, and therefore offered no explanations for it.  Father told the DCFS investigator that he never opened the shower curtain when Alyssa was showering.  Father's interview on the subject of whether he ever got into bed with Alyssa after fighting with mother was somewhat uncertain.  He first stated that there were times when he would come home and his children would sleep with him and he with them.  But when asked "if everyone had a bed," father's response was "it only happened one time," and he said the children "would come to him and [mother]."

6

added that father opening the shower curtain made her feel uncomfortable and "not normal."

We need not decide the legal effect if father had opened the shower curtain only once as he alleged or that he was only looking for soap. The contrary evidence worthy of belief was that he opened the shower curtain on Alyssa repeatedly, and told her that he was going to keep a watchful eye on her. More than that, father repeatedly got into Alyssa's bed with her at night, once when the girl was wearing only a bra and underwear. Taken together, father's multiple attempts to see his stepdaughter naked and lie next to her in a state of partial undress give rise to the inference that he acted out of an improper sexual motive.[3]

As there was substantial evidence that father's behavior was sexually motivated, the jurisdictional finding under Welfare and Institutions Code section 300, subdivision (d) must be affirmed. As father makes no argument that the dispositional order was unsupported other than for insufficient evidence of sexual molestation, we also uphold the order requiring father's counseling to address sexual boundaries.

## DISPOSITION

The jurisdiction and dispositional orders are affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.                                    GRIMES, J.

---

[3] Father briefly argues that he presents no *current* risk of sexual abuse because, after a social worker visited in 2013 in response to Alyssa's letter, father stopped using the bathroom when Alyssa showered and did not sleep with the girls unless mother was also present. But, as the trial court rightly noted, nothing has "ever been done for this problem." Even though father may have controlled his behavior in these two respects for some limited time, he has had no counseling to address his clear misunderstanding of sexual boundaries, and his own daughter would soon reach the age where he would present a risk to her.

7