Filed 9/14/20  In re Mia S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MIA S. et al., Persons Coming Under the Juvenile Court Law. | B300204 |
| | (Los Angeles County Super. Ct. Nos. 19CCJP03735B-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. EDWIN T. et al., Defendants and Appellants, MIA S. et al., Minors and Appellants. | |

APPEALS from jurisdiction findings and disposition orders of the Superior Court of Los Angeles County, Craig S. Barnes Judge.  Affirmed in part, reversed in part and remanded with directions.

Mary C. Wickham, County Counsel, Kristine P. Miles and Jessica S. Mitchell, Assistant County Counsel, for Plaintiff and Appellant.

Jesse McGown, under appointment by the Court of Appeal, for Defendant and Appellant Edwin T.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant Maricela H.

Marissa Coffey for Minors and Appellants.

_____

Maricela H. and Edwin T., the mother and presumed father of nine-year-old Mia S. and four-year-old Emma S., appeal the juvenile court's jurisdiction findings and disposition orders declaring Mia and Emma dependent children of the court under Welfare and Institutions Code section 300, subdivision (b)(1) (failure to protect),[1] following Edwin's arrest for arranging over the Internet to have sexual intercourse with a 16-year-old minor. Mia and Emma also appeal, joining their parents' arguments. The Los Angeles County Department of Children and Family Services (Department) cross-appeals, contending the juvenile court erred when it dismissed an identically pleaded count alleging Mia and Emma were at substantial risk of sexual abuse by Edwin within the meaning of section 300, subdivision (d).  We

_____

[1]    Statutory references are to this code unless otherwise stated.

reverse the subdivision (b)(1) findings, affirm the subdivision (d) finding and remand with directions to the juvenile court to dismiss the petition.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Edwin's Attempted Sexual Liaison, Arrest and Conviction*

Using the messaging feature on a social media website, on March 11, 2019 Edwin contacted an undercover officer from the Los Angeles County Sheriff's Department's human trafficking bureau posing as Dejanira, a 16-year-old female, based on Dejanira's profile indicating she was sexually available. According to the incident report prepared the day after Edwin's arrest, Edwin texted Dejanira for several days after first contacting her; and on March 17, 2019 asked, "Are you available $$$."  Dejanira replied, "I'm young is dat ok?"  Edwin asked how old she was, and Dejanira answered she would turn 17 the following month.  Edwin asked what she was offering and the price.  Dejanira responded $60 for sexual intercourse and $40 for oral sex.  Edwin texted, "I want both Lets get a room [where] u at."  After further exchanges that again included specific reference to Dejanira's age and Edwin's promise of payment for sexual acts, as well as mutual assurances they were not police officers, they agreed to meet on March 18, 2019 at a convenience store, later changed to a liquor store.  When he arrived at the meeting location, Edwin was arrested for arranging to meet with a minor to engage in lewd acts (Pen. Code, § 288.4, subd. (b)).

On May 7, 2019 Edwin pleaded no contest to attempted unlawful sexual intercourse with a minor more than three years younger than the perpetrator, charged as a felony.  (Pen. Code, §§ 664, 261.5, subd. (c).)  Edwin, who had no prior criminal

3

record, was placed on formal probation for five years and required to participate in a 52-week sex offender counseling program. As an additional condition of probation Edwin was prohibited from having any unsupervised contact with minors. Based on the judge's instructions, Edwin understood his own children were included in the court-ordered restriction.[2]

2. *The Department's Petition*

Edwin resided in a two-bedroom home with Maricela, his 13-year-old son Edwin S., Mia, Emma and the children's paternal grandmother. Following a routine compliance check on Edwin at the family home on June 10, 2019, Edwin's probation officer notified the Department of Edwin's conviction and the conditions of his probation, including the prohibition of unsupervised contact with minors.

An emergency response children's social worker visited the home and interviewed Edwin, Maricela, Edwin S., Mia and the paternal grandmother. The social worker learned that Edwin had not shared the details of his arrest and conviction with Maricela, claiming only that he had been "set up." For her part, Maricela knew Edwin had been convicted of a crime but declined to obtain more information because she was afraid of what she might learn. Although Edwin had told Maricela he needed to be supervised around children, Maricela did not understand this restriction applied to his own children. Nonetheless, Edwin, Maricela and the paternal grandmother, who apparently was the children's primary caregiver because both parents worked, insisted Edwin was never alone with any of the children;

---

[2] The criminal court minute order simply states, "No unsupervised contact with minors."

4

Maricela or the paternal grandmother was always present when Edwin and one of the children were together. Edwin S. and Mia confirmed they were never alone with their father. (Emma was too young to provide meaningful information.)

The Department initiated dependency proceedings on behalf of Edwin S., Mia and Emma on June 13, 2019 under section 300, subdivisions (b)(1) and (d). In identical language for both counts the Department alleged, "From 3/11/19 to 3/18/19, the children, Edwin S[.], Mia[ ] and Emma['s] father, Edwin T[.] engaged in a course of conduct with the purpose of having sexual contact with a minor. The children's father communicated with a person the father believed to be an underage female on-line. The female told the father her age and the father continued to communicate with her and the father arranged to meet and have sex with the person the father believed to be a minor for the purpose of engaging in lewd and lascivious conduct. The mother, [Maricela], failed to protect the children in that the mother was aware the father engaged in a crime which resulted in father's contact with children was restricted, yet mother failed to ensure father was participating in sex offender class to address his conduct and allowed father to reside in the children's home and have unlimited access to the children. On 5/7/19, the father was convicted of Arranging A Meeting With A Minor. The father's conduct and the mother's failure to protect the children endanger the children's physical health and safety and place the children at risk of harm, damage, danger, sexual abuse and failure to protect."

At an initial petition hearing on June 14, 2019 the court found a prima facie case had been made that the children came within section 300, but, on the Department's recommendation,

released the children to their parents. The court ordered Edwin to comply with the criminal court order regarding unsupervised contact with his children.

### 3. *The Jurisdiction/Disposition Hearing*

In its report for the August 21, 2019 jurisdiction/disposition hearing, the Department summarized interviews with Edwin S., Mia, Edwin, Maricela and the paternal grandmother. Edwin S. and Mia denied any abuse in the home; Edwin S. said he and his sisters were safe; and Mia described her parents as getting along very well with each other.

Edwin agreed the description of his conduct in the Department's petition was accurate and admitted, "I wasn't thinking properly. . . . I was being a dumbass." However, Edwin disagreed that Maricela had failed to protect the children, describing her as "very protective." He insisted that, since his release from custody, he had not been alone with any of the children. Maricela or the paternal grandmother always supervised his contact with them. Edwin acknowledged he had been slow to enroll in the court-ordered sex offenders program, but explained the delay was due to difficulty he had getting a correct referral from the probation department. The report attached an enrollment verification form indicating Edwin had registered for the 52-week sex offender counseling program on June 11, 2019.

Maricela again stated she did not fully understand the nature of Edwin's conduct prior to initiation of the dependency proceedings when she finally saw the police report. He had told her he needed to stay off social media and could not be left alone with children, including Edwin S., Mia and Emma; but she "didn't want to see the reality of it. It's his mess." Maricela told

the social worker she and the paternal grandmother monitored all of Edwin's contact with the children and stated she had no concerns regarding the children's safety with Edwin living in their home. Both Edwin and Maricela agreed they had communication issues and believed couples counseling would be helpful.

The paternal grandmother reported the children were well cared for by both parents, confirmed they were never left alone with Edwin and said she had no concerns for their safety. She described Maricela as protective of the children.

The Department had initially categorized the children as "'Very High' for future risk of general neglect/sexual abuse living under the care of their parents" because of Edwin's criminal conduct and Maricela's reluctance to learn the details of his offense. Nevertheless, as it had when it filed the dependency petition, the Department continued to believe the children could remain safely in the home with their parents as long as Edwin complied with the conditions of his probation. The report indicated the children were healthy with no signs of abuse or neglect. A last minute information report filed shortly before the hearing advised that Edwin and Maricela had enrolled in a couples counseling program on August 3, 2019.

Maricela testified at the jurisdiction hearing she would move out with the children if that were necessary to keep them safe from Edwin, and she also explained she would have reacted very differently if Edwin had attempted to have sex with a 10-year-old. After Maricela's testimony her lawyer and counsel for Edwin and the children urged the court to dismiss the petition, emphasizing Mia and Emma were not only Edwin's

biological children but also significantly younger than the unrelated 16-year-old Edwin believed he was contacting for sex.

The court dismissed the subdivision (d) count and, after deleting Edwin S. from the subdivision (b)(1) count,[3] sustained that count as pleaded as to both Edwin and Maricela. Concerning Edwin the court stated, "Father's conduct does not appear to be in dispute, and it's the kind that would place the young girls at risk." As to Maricela it explained, "I tell you why I see [the parent's communication issue] as a risk, because if what you're on probation for is kept a secret and part of it is mom supposed to watch you to make sure you're abiding, she's got to know what risks are attendant to that. And if their relationship is such that that's not being shared, then the children are basically walking in a risky environment." It continued, "Mother's testimony highlights her concerns for the children and the challenges she faces. However, it also highlights some of the triggering events that places them at risk by Father's conduct."

Proceeding to disposition, the court declared Mia and Emma dependents of the court, allowed them to remain in their parents' care and ordered Maricela and Edwin to participate in family maintenance services. Maricela's case plan included participation in a sex abuse awareness counseling program and specified she was to ensure that Edwin was not left alone with

---

[3]    Although urging the court to dismiss the entire petition, minors' counsel argued there was absolutely no basis for believing Edwin S., a 14-year-old boy, was at risk: "We have no reason to believe that Father other than this incident has ever had any contact but particularly with a boy." The court asked the Department's counsel why Edwin S. had been named. Counsel agreed he should be dismissed from the petition.

the children pursuant to the terms of his probation.  Edwin's case plan required him to comply with all orders of the criminal court, including completion of a 52-week sex offenders program.

Maricela, Edwin, Mia and Emma timely appealed the juvenile court's jurisdiction findings and disposition orders.  The Department cross-appealed dismissal of the subdivision (d) count as it related to Edwin, but concedes on appeal the jurisdiction finding as to Maricela under subdivision (b)(1) was error.

## DISCUSSION

1. *Governing Law and Standard of Review*

A child may be adjudged a dependent child of the juvenile court under section 300, subdivision (d), if there is a substantial risk the child will be sexually abused, as defined by Penal Code section 11165.1, by a parent or a member of the child's household. (*In re D.G.* (2012) 208 Cal.App.4th 1562, 1571-1572; see *In re I.J.* (2013) 56 Cal.4th 766, 773.)  Penal Code section 11165.1 defines "sexual abuse" to include acts that violate Penal Code sections 261.5 (sexual intercourse with a minor), 288 (lewd or lascivious acts upon a child) and 647.6 (annoying or molesting a child).[4]  Jurisdiction under section 300, subdivision (d), may also be asserted over a parent who knew or reasonably should have known a child was in danger of sexual abuse and who failed to adequately protect the child.

Section 300, subdivision (b)(1), authorizes the court to adjudge a child a dependent of the juvenile court if "[t]he child

---

[4]     A violation of Penal Code section 261.5 (unlawful sexual intercourse with a child under 18 years old) is not specifically enumerated in Penal Code section 11165.1 as constituting sexual abuse.

9

has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." Courts have frequently summarized subdivision (b)(1) as requiring proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820; see *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see also *In re Jesus M.* (2015) 235 Cal.App.4th 104, 111; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1395-1396.) However, the Supreme Court in *In re R.T.* (2017) 3 Cal.5th 622 clarified section 300, subdivision (b)(1), does not require a parent commit neglect or deserve blame for being unable to supervise or protect the child, only that a failure or inability to provide the necessary supervision or protection exists. (*In re R.T.*, at p. 629.)

The Department has the burden of proving by a preponderance of the evidence a child should be declared a dependent of the court under section 300. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; see § 355, subd. (a).) When the juvenile court finds the Department has carried that burden and sustains a section 300 petition, we review the court's findings for substantial evidence. (*In re R.T.*, *supra*, 3 Cal.5th at p. 633; *In re I.J.*, at p. 773.) Under that standard we inquire whether the evidence, contradicted or uncontradicted, supports the court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court. (*In re R.T.*, at p. 633; *In re I.J.*, at p. 773.)

However, "[s]ubstantial evidence is not synonymous with any evidence.  [Citation.]  To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value."  (*In re M.S.* (2019) 41 Cal.App.5th 568, 580; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046 [while substantial evidence may consist of inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding].)

When the Department appeals the juvenile court's conclusion it failed to carry its burden of proof, as in all failure-of-proof cases, we determine only whether the evidence compelled a finding in favor of the Department as a matter of law.  (*In re R.V.* (2015) 61 Cal.4th 181, 218 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law,'" quoting *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528]; accord, *In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

> 2. *The Evidence Does Not Compel a Finding of a Substantial Risk Mia and Emma Will Be Sexually Abused by Edwin*

When evaluating the Department's evidence regarding the subdivision (d) count, the juvenile court stated, "I just don't think you make it because Father's conduct gets stopped before any of the elements of a (d)(1) is there."  That rationale for dismissing the subdivision (d) count was mistaken:  Although Edwin's attempted crime did not constitute sexual abuse within the meaning of Penal Code section 11165.1, the issue before the court was not whether Edwin had already committed sexual abuse as

11

defined in that provision, but whether Mia and Emma were at risk for such sexual abuse in the future. A parent's attempt to commit a serious sexual offense, even if not successful, could certainly create the substantial risk Welfare and Institutions Code section 300, subdivision (d) addresses.

Similarly focusing on the nature of Edwin's criminal act, rather than the risk to Mia and Emma, the Department explains a violation of Penal Code section 647.6 (annoying or molesting a child) constitutes sexual abuse within the meaning of Penal Code section 11165.1 and, therefore, Welfare and Institutions Code section 300, subdivision (d), and physical contact between perpetrator and victim is not required for a violation of section 647.6. (See, e.g., *In re R.C.* (2011) 196 Cal.App.4th 741, 750 ["[n]o touching is required, but the statute requires conduct that would unhesitatingly irritate a normal person, and '"conduct '"motivated by an unnatural or abnormal sexual interest"' in the victim"'"].) Edwin violated section 647.6, the Department continues, by soliciting a sexual act from a minor. (See *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1750; *People v. LaFontaine* (1978) 79 Cal.App.3d 176, 179-180 [predecessor to Penal Code section 647.6].)[5]

___

[5] A conviction for violating Penal Code section 647.6 would have created a rebuttable evidentiary presumption under Welfare and Institutions Code section 355.1, subdivision (d), that Mia and Emma were at substantial risk of abuse. Even if otherwise applicable, however, that presumption would have no effect in this case because, once evidence is introduced that would support a contrary finding, "the presumption disappears and the matter must be determined based on all the evidence presented, including the fact of the prior conviction and reasonable

12

Edwin's conduct, even though his first criminal offense of any sort, might support a finding under subdivision (d), as the Department contends. Indeed, the juvenile court said as much when it sustained the subdivision (b)(1) count. Without in any way intending to suggest we excuse Edwin's behavior, however, given the significant differences between Edwin's nearly 17-year-old, unrelated, intended victim and his two prepubescent daughters, the evidence did not compel a finding Mia and Emma were at substantial risk of sexual abuse from their father. There was no evidence he had ever acted inappropriately toward either child, sexually or otherwise; and both Maricela and the paternal grandmother confirmed he was a good father and they believed the children were safe in the home. (See *In re B.T.* (2011) 193 Cal.App.4th 685, 695 [mother's sexual relationship with the 15-year-old son of a neighbor, which resulted in her pregnancy, did not place the mother's infant daughter at risk of sexual abuse]; see generally *In re I.J.*, *supra*, 56 Cal.4th at p. 780 [juvenile court is not compelled, "as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused"].)

3. *Substantial Evidence Does Not Support the Subdivision (b)(1) Jurisdiction Finding as to Edwin*

As discussed, the Department's section 300 petition alleged, in identical language, that Mia and Emma came within the jurisdiction of the juvenile court under both subdivisions (b)(1) and (d) based on Edwin's attempted sexual liaison with "Dejanira" and Marcela's inattention to the circumstances of his arrest and conviction and the consequent need to protect the

---

inferences derived from it." (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 610.)

children by keeping Edwin from having unsupervised contact with them.  Whatever substantial risk of future serious physical harm the juvenile court may have believed Edwin's conduct created, however, it was necessarily the result of Edwin's intentional acts, not a consequence of his failure or inability to protect or supervise his children.  And no other evidence relating to Edwin supports a subdivision (b)(1) finding:  There was no evidence of domestic violence between Edwin and Maricela, and no suggestion either parent used inappropriate physical discipline or otherwise physically or emotionally abused the children.  In short, the finding as to Edwin under section 300, subdivision (b)(1), lacked any evidentiary support.

4. *Substantial Evidence Does Not Support the Jurisdiction Finding as to Maricela*

Unlike the allegations concerning Edwin, the petition's subdivision (b)(1) allegations regarding Maricela describe her failure to adequately protect Mia and Emma by allowing Edwin to remain in the home with them, permitting him to have unlimited access to the children and not ensuring he was participating in a sex offender class to address his conduct, as ordered by the criminal court.  The evidence before the court, however, disproved those allegations.  Maricela, Edwin and the paternal grandmother all affirmed that Edwin was not allowed unsupervised contact with children following his arrest, and none had occurred.  No contrary evidence was presented.  In addition, Edwin had enrolled in the required sex offender program two days before the dependency petition was filed, as established by the registration form submitted to the court by the Department prior to the jurisdiction hearing.  As discussed, the Department

14

has conceded it was error to sustain the subdivision (b)(1) finding as to Maricela.

The juvenile court's concerns about Maricela and Edwin's lack of communication and Maricela's initial unwillingness to learn the details of Edwin's criminal conduct and conditions of probation are similarly insufficient to support a subdivision (b)(1) finding. Section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re Savannah M.*, *supra*, 131 Cal.App.4th at p. 1396.) While the court may consider past events in deciding whether a child currently needs the court's protection, there must be some reason to believe that the conduct will continue to support the exercise of jurisdiction. (*In re Kadence P.*, at p. 1384; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216; see *In re S.O.* (2002) 103 Cal.App.4th 453, 461.) Here, as Maricela argues, and the Department implicitly agrees, by the time of the jurisdiction hearing Maricela was well aware of the circumstances that led to Edwin's conviction and the conditions of his probation. As she testified, she was determined to honor the prohibition of unsupervised contact between Edwin and the children and was fully prepared to move from the family home if necessary to protect them: "The safety of my children will be first." There was no evidence of any current risk to the children as a consequence of Maricela's failure to supervise or protect them.

## DISPOSITION

The juvenile court's finding of a lack of jurisdiction under section 300, subdivision (d), is affirmed.  The jurisdiction finding under subdivision (b)(1) and disposition orders are reversed.  The juvenile court is directed to dismiss the petition.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

16