Filed 9/28/16  Conservatorship of Ribal CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person and Estate of JOSEPH E. RIBAL. | |
| LINDA ROGERS, as Conservator, etc., | G052668 |
| Petitioner and Respondent, | (Super. Ct. No. 30-2012-00557942) |
| v. | O P I N I O N |
| LU TUAN NGUYEN, | |
| Objector and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Request for judicial notice granted.  Judgment affirmed.

Lu Tuan Nguyen, in pro. per., for Objector and Appellant.

Law Offices of Cheryl L. Walsh and Cheryl L. Wash for Petitioner and Respondent.

\*          \*          \*

Lu Tuan Nguyen appeals from a judgment ordering him to return nearly $160,000 to the Conservatorship of the Person and Estate of Joseph E. Ribal, plus pay the conservatorship an additional $20,000 in personal injury damages and pay the conservator's attorney fees and costs. Nguyen contends conservator Linda Rogers lacked standing to seek recovery of nearly $44,000 in unpaid rent because Ribal's living trust held title to the leased premises. In support of this argument, Nguyen has filed a request that we take judicial notice of the deed transferring title of the rental property to Ribal's living trust. Nguyen also asserts the probate court erred in ordering him to return the foregoing sum to the conservatorship, claiming he was exercising the discretion afforded to him under a durable power of attorney in choosing to waive the tenant's payment of rent.

In addition, Nguyen claims the probate court erred in ordering him to reimburse the conservatorship over $16,400 in credit card expenses because Ribal authorized his use of the card. Finally, Nguyen attacks the credibility of Rogers's mental health experts who opined Ribal lacked the mental capacity to handle his affairs from January 2010 forward.

We grant Nguyen's request to take judicial notice of the deed, but conclude his appellate arguments lack merit and affirm the judgment.

I

FACTS

Ribal and Nguyen met in the 1970's. At that time, Ribal was married and the father of two children. In 1983, Ribal and his wife separated. They later divorced. That same year, Nguyen moved into Ribal's home. However, Ribal and Nguyen kept their respective financial assets and accounts separate.

In 2008, Ribal executed a durable power of attorney appointing Nguyen as his attorney-in-fact. At trial, Nguyen acknowledged that he had assumed the obligation to act solely in Ribal's interest in exercising his authority under the power of attorney. In

January 2010, Ribal and Nguyen filed a declaration of domestic partnership with the State of California. (*In re Domestic Partnership of Ribal and Nguyen* (Mar. 4, 2015, G049594) [nonpub. opn.].)

Laura Tiano, Ribal's daughter, testified that in the late 1990's she noticed her father began to display signs of dementia. According to Tiano, Ribal "was forgetful . . ., his speech was starting to get repetitive," and "[h]e had some challenges organizing himself." Even Nguyen admitted that in 2006 he noticed Ribal had become forgetful, a symptom he "attributed . . . to . . . Alzheimer's" disease. Nguyen also acknowledged that in 2008, due to the progression of Ribal's symptoms, he and Ribal attended a presentation by the Alzheimer's Association. An individual who served on a school board with Ribal testified that in 2009 he noticed Ribal "had trouble carrying on a conversation[,] . . . became confused," and "would lose his way around the campus and school district office."

There was further evidence that Ribal's mental and physical condition continued to deteriorate. On one occasion in 2011, Ribal wandered away from his residence and was found in a nearby park bleeding from a gash on his head. During a visit in early 2012, Tiano learned Nguyen had hired a caregiver who stayed with Ribal only four hours a day, and had the lock on the residence's front door altered so that Ribal could not leave the home when he was alone.

Tiano testified she spoke with Nguyen about her concerns. According to Tiano, Nguyen said he could care for Ribal and that Ribal was fine. Tiano also claimed Nguyen was not forthcoming about Ribal's medical condition.

Ribal was hospitalized in February 2012. He was later moved to rehabilitation facilities and eventually to a senior citizen center. Tiano and her brother obtained a restraining order limiting Nguyen's contact with Ribal. Subsequently, they were appointed Ribal's temporary conservators and filed a petition to annul Ribal's and Nguyen's domestic partnership. While that proceeding was pending, the probate court

3

appointed Rogers as permanent conservator of Ribal's person and estate. The annulment proceeding resulted in a judgment nullifying the domestic partnership based on a finding Ribal lacked the mental competence to enter into the relationship. (*In re Domestic Partnership of Ribal and Nguyen, supra*, G049594.) This court later affirmed the judgment. (*Ibid.*)

In February 2014, Rogers filed a petition against Nguyen in the probate court seeking a return of the conservatee's property and damages for financial and physical elder abuse. Trial of this matter covered eight days in December 2014.

Among other matters, the evidence presented at trial established that, during a two and one-half year period beginning in early 2010, on all but six occasions Nguyen failed to collect rent from the tenant leasing a rental unit owned by Ribal. By December 2011, the unpaid rent totaled $43,950. Nguyen testified the rental unit had drainage problems and the tenant had been injured in February 2010 when she slipped on a pool of water. The injuries precluded her from working. Nguyen also claimed the tenant complained of mold in the rental unit. According to Nguyen, he spoke to Ribal about the situation and Ribal purportedly agreed to waive the unpaid rent for two reasons: as "a settlement" so the tenant would not "sue," and "as a Christmas present to her." Nguyen acknowledged he did not obtain a release of liability from the tenant or enter into a settlement agreement with her in return for waiving the unpaid rent.

Ribal had a credit card account paid by automatic withdrawals from his separate bank account. Nguyen was authorized to use the card. Between March 2011 and February 2012, Nguyen used the credit card to pay nearly $17,000 in expenses solely for himself or his family.

At trial, the medical experts agreed Ribal suffered from Alzheimer's disease. However, there was a disagreement concerning when his condition had deteriorated to the point that he no longer could care for himself or understand and consent to financial decisions.

4

Two experts called by Rogers, both of whom examined Ribal in mid-2012, opined that by January 2010, Ribal lacked the ability to care for himself or handle financial matters. In part, both witnesses relied on a report prepared by a Dr. Rudolph B. Shey who had examined Ribal in March 2010. Dr. Shey's report stated he gave Ribal a Mini Mental Treatment Status Examination (MMTSE), a 30-point questionnaire intended to assess a person's cognitive capacity concerning orientation to time, place, and location, plus short-term memory and the ability to handle information. Ribal scored 11 out of the possible 30 points on the MMTSE. One of the conservator's expert witnesses, Dr. Jody M. Rawles, administered an MMTSE to Ribal in May 2012. This time Ribal scored a five on the exam. Both of Rogers's expert witnesses testified Alzheimer's is a progressive disease in which a person's score on the MMTSE generally decreases at the rate of two to three points a year. Rogers's other expert witness, Dr. Bonnie Olsen, testified that she decided not to administer the MMTSE when she examined Ribal because he gave a nonsensical response when she asked him if he was retired.

Nguyen's expert witness, Dr. David Lombardi, disputed the accuracy of the MMTSE administered by Dr. Shey. Lombardi claimed Shey failed to properly document his examination of Ribal, asserting the report mentions only 10 wrong answers on the MMTSE. Further, Lombardi testified that it was not appropriate to rely solely on an MMTSE score to determine the extent of patient's dementia. According to Lombardi, an examiner must consider the results in the context of other information, such as how the patient presents himself or herself and the comments of family members on the patient's behavior. Based on his review of Ribal's medical records, Lombardi testified it was not possible to conclude Ribal had lost the capacity to enter into a contract earlier than January 2013.

The probate court entered judgment for Rogers. The judgment ordered Nguyen to return to the conservatorship a net recovery of $79,991.02, which included

$43,950 for the uncollected rent and $16,481.52 in unauthorized credit card expenses.[1] The court then doubled the amount to be reimbursed pursuant to Probate Code section 859.[2] In addition to the reimbursed monies, the court also ordered Nguyen to pay both $20,000 in personal injury damages and Rogers's attorney fees and costs.

## II

## DISCUSSION

### A. *Scope of Review*

The issues raised by Nguyen in this appeal largely involve questions of fact. However, his opening brief contains a limited statement of the evidence presented at trial. Further the brief's factual summary is largely favorable towards him.

Nguyen's appellate brief fails to apply with the proper scope of appellate review. This case involves a trial covering all or part of eight days with testimony from 11 witnesses and the introduction of numerous exhibits. The clerk's transcript is nearly 1000 pages in length and the reporter's transcript is even longer.

As Rogers recognizes, "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its

---

[1] The reimbursement portion of the judgment covered four categories of Ribal's assets. In addition to ordering Nguyen to reimburse the conservatorship for uncollected rent and unauthorized credit card charges, the probate court also ordered him to reimburse $22,716.71 in unauthorized ATM withdrawals and $32,842.79 in unauthorized checks. The gross amount of all reimbursed assets amounted to $115,991.02. However, the court then deducted from this sum $36,000 for Nguyen's efforts on Ribal's behalf. Subtracting $36,000 from $115,991.02 resulted in a net reimbursement award of $79,991.02, which when doubled equaled $159,982.04.

In this appeal, Nguyen challenges only the portions of the judgment ordering him to reimburse the conservatorship for the uncollected rent and unauthorized credit card charges.

[2] Unless otherwise indicated, all further statutory references are to the Probate Code.

6

correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  Further, when an appellant attacks the trier of fact's findings "'a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact,'" and is limited to determining "'whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

A corollary of the foregoing principles is that "[t]o prevail on a substantial evidence claim a party must "'set forth in [its] brief all the material evidence on the point and not merely [its] own evidence.'"" (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1304.)  An appellant's brief that contains "[a] recitation of only [its] evidence is not the 'demonstration' contemplated under the above rule" and its evidentiary sufficiency challenge will be "'deemed to be waived.'" (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.)

The mere fact Nguyen is representing himself in this appeal does not excuse him from compliance with these requirements.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)  Thus, we conclude Nguyen's failure to provide a complete summary of the evidence presented at trial results in a waiver of his evidentiary arguments.

Further, as discussed below, we conclude Nguyen's legal arguments are also unpersuasive.


*B.  Nguyen's Failure to Collect Rent*

Nguyen attacks the portion of probate court's judgment directing him to reimburse the conservatorship for the uncollected rent on two legal grounds.  First, he claims Rogers lacks standing to seek recovery of the unpaid rent because title to the rental unit was held in Ribal's living trust and under the durable power of attorney he had authority to manage the property.  In support of this argument, Nguyen requests we take

7

judicial notice of a copy of the deed transferring title to the trust. Second, again relying on the terms of the power of attorney, Nguyen claims he had discretion to waive payment of rent.

Neither contention has merit. As for Rogers's standing, section 2401, subdivision (a), gives the "conservator . . . the management and control of the estate." The term "estate" is defined as "all of the conservatee's . . . personal property, wherever located, and real property located in this state." (§ 2400, subd. (b).) The powers granted to the conservator include the authority to "[c]ommence and maintain actions and proceedings for the benefit of the . . . conservatee or the estate." (§ 2462, subd. (a).) Since the living trust is revocable during Ribal's lifetime, as the settlor of the trust he remained owner of the rental unit. (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319.) Thus, we conclude Rogers had standing to maintain this action against Nguyen for his failure to collect rent from the tenant of Ribal's rental unit.

Nguyen also relies on the durable power of attorney to justify his decision not to collect the rent. First, we note this argument contradicts his trial testimony. At trial, Nguyen testified he "talked to Dr. Ribal about [his] concern[s] and asked if we just waive the rent [the tenant] owed us[.] And Dr. Ribal agreed that we'd waive the rents" as "a settlement" to "make sure that [the tenant's] happy" and would not "sue," and "as a Christmas present to [the tenant]." When asked if he was "making decisions concerning the [rental] property," Nguyen again asserted he made the decision to waive payment of the unpaid rent after he "presented the information to Dr. Ribal" and "got his approval."

But even accepting Nguyen's new theory, that the "power of attorney gave [him] discretion to waive the rent," his argument fails. Section 4231, subdivision (a) provides that, except where one has special skills or expertise, "in dealing with property of the principal, an attorney-in-fact shall observe the standard of care that would be observed by a prudent person dealing with property of another." The Law Revision Commission comment to this section notes, "[t]he prudent person standard in subdivision

8

(a) is generally consistent with the standard applicable under general agency law." (Cal. Law Revision Com. com., 52B West's Ann. Prob. Code (2009 ed.) foll. § 4231, at p. 288.) Further, "[a]n attorney-in-fact has a duty to act solely in the interest of the principal and to avoid conflicts of interest." (§ 4232, subd. (a).) Case law has described the relationship of an agent to his or her principal as "a confidential one, fiduciary in character," with "[t]he acts of an agent . . . judged with almost the same strictness as those of a trustee." (*Estate of Arbuckle* (1950) 98 Cal.App.2d 562, 569.)

"Whether a fiduciary duty has been breached is a question of fact. [Citation.] Accordingly, we review the trial court's finding . . . for substantial evidence," drawing "'all reasonable inferences from the evidence to support the findings and orders of the [probate] court.'" (*Agam v. Gavra* (2015) 236 Cal.App.4th 91, 113.) Under this standard, "neither conflicts in the evidence nor '"testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment."'" (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)

As discussed above, Nguyen's failure to present a complete summary of the relevant evidence constituted a waiver of this claim. Further, the evidence supports a conclusion Nguyen breached his fiduciary obligations to Ribal by waiving the unpaid rent. One purported basis for his decision was to avoid being sued by the tenant due to her injury and the claim of mold infestation. But Nguyen acknowledged he did not obtain a release of liability or have her sign a settlement agreement in return for the waiver of unpaid rent. Thus, Ribal remained open to the possibility of being sued by the tenant. The alternative reason expressed by Nguyen, as "a nice . . . Christmas present," simply violated the prudent person standard of care imposed on him by the power of attorney. (§ 4231, subd. (a).)

Consequently, we conclude the probate court did not err in ordering Nguyen to reimburse the conservatorship for the unpaid rent.

9

## C. The Credit Card Charges

Nguyen claims the probate court also erred in ordering him to reimburse the conservatorship for his use of Ribal's credit card to pay for the expenses of himself and his family. In support of this claim, Nguyen cites Civil Code section 1747.02. Subdivision (f) of that statute declares "'Unauthorized use'" of a credit card "does not include the use of a credit card by a person who has been given authority by the cardholder to use the credit card." (Civ. Code, § 1747.02, subd. (f).)

The problem with Nguyen's argument is that it ignores the probate court's findings. In its statement of decision, the court agreed Nguyen "was an authorized user" of Ribal's credit card. But the court concluded Nguyen must reimburse the conservatorship for purchases not made "for Ribal's benefit" that began in March 2011 when "Ribal lacked the capacity to authorize the purchases." In other words, while Nguyen initially had authority to incur charges on Ribal's credit card, by early 2010, the progression of Ribal's dementia resulted in a cessation of Nguyen's authorization to use the card for purchases that were not for Ribal's benefit. Consequently, his use of the card for purely personal expenses a year later were unauthorized, particularly in light of the obligations imposed on him by the power of attorney.

We find no error in the probate court's decision to order reimbursement for Nguyen's use of Ribal's credit card for his own benefit.

## D. The Expert Witnesses' Testimony

Finally, Nguyen contends the probate court erred in relying on Rogers's expert witnesses to conclude Ribal lacked the ability to make financial decisions as of January 2010. He argues the court should have relied on the testimony of Dr. Lombardi, his expert, who concluded the evidence failed to establish Ribal was incompetent prior to January 2013.

10

Nguyen's argument again ignores the scope of appellate review. A determination concerning the credibility of a witness falls within "'"the exclusive province of the [trier of fact],"'" including "'"the truth or falsity of the facts upon which a determination depends."'" (*Oldham v. Kizer, supra*, 235 Cal.App.3d at p. 1065.) This rule applies to expert witnesses. (*In re Katrina W.* (1994) 31 Cal.App.4th 441, 447 ["It is not within the province of an appellate court to reweigh either the qualifications or the credibility of the expert witnesses"].) Thus, "the relevant and considered opinion of [an expert witness], though inconsistent with other [experts'] opinions, may constitute substantial evidence" supporting a trier of fact's decision. (*Smith v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592.) Based on this authority, Nguyen's conclusory attack on the testimony of Rogers's expert witnesses fails.

In his reply brief, Nguyen argues the testimony provided by Drs. Rawles and Olsen failed to support the probate court's decision because their testimony was based on speculative and improper matter. Not so. Rawles and Olsen relied on Ribal's medical records just as did Dr. Lombardi, Nguyen's expert witness. All three witnesses agreed Ribal's MMTSE tests were relevant to a determination of his mental condition. The dispute concerned the adequacy of Dr. Shey's documentation of the MMTSE he administered to Ribal in March 2010 and the extent to which one could rely on the results of an MMTSE to determine a patient's level of cognition. Under these circumstances, we cannot say the probate court erred in relying on the opinions expressed by Rogers's expert witnesses.

11

III

DISPOSITION

Appellant's request for judicial notice is granted. The judgment is affirmed. Respondent is entitled to recover her costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

12