Filed 3/30/21  In re L.L. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re L.L. et al., Persons Coming Under the Juvenile Court Law. | B307013 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.L. et al., <br><br> Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. 20CCJP03062A, 19CCJP03062B) |

APPEALS from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant E.L.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant R.L.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

———————————

E.L. (mother) and R.L. (father) appeal from the orders of the juvenile court asserting dependency jurisdiction over their two daughters, removing the children from father's custody, and ordering father to complete a drug and alcohol program. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in May 2020, after the parents' 10-year-old daughter, L.L., told law enforcement that father touched her inappropriately while they were lying on a bed together.

The incident occurred in the family's home while mother was at work and L.L.'s 22-month-old sister, K.L., was asleep in the back bedroom. L.L. told police and, later, a DCFS social worker, that on the evening of May 18, 2020, father entered the main bedroom where she was sitting and closed the blinds. L.L. thought father's behavior was strange, so she went to the back bedroom to wake up K.L. Father went to the back bedroom, picked L.L. up by the waist, carried her to the main bedroom, sat her on the bed, and told her to stay there. He then moved L.L. to the center of the bed, laid her down, and got on the bed next to her. Father pulled L.L. by the shoulder to face him and began rubbing her thigh. L.L. told a police officer that father wrapped her legs around one of his legs. Father then touched L.L.'s

2

buttocks three times; L.L. said father "grabbed her butt and caressed her thighs" during the incident.

L.L. knew the difference between a bad touch and a good touch and stated that it was common for her family to pat each other on the buttocks. However, on this occasion, L.L. was uncomfortable because she thought father was going to "do something" when he closed the blinds and mother was not home. L.L. was scared and felt her heart beating faster than usual as she and father were lying on the bed. When father got up and went into the kitchen, L.L. closed herself in the bathroom. She text messaged her mother, "mami," about five times. When mother did not respond, L.L. called 911 but was unable to get through. She next sent a message to a friend who called police for her.

Father was arrested for sexual battery pursuant to Penal Code section 243.4, subdivision (e)(1). He was released the next day and not charged with a crime. After father returned home the family resumed their normal routines. Father continued to care for the children alone while mother was not home.

DCFS received a referral on May 19, 2020, and opened an investigation. Social workers interviewed L.L., mother, and father on May 21, 2020, and again in June 2020. L.L. told a social worker father had touched her in a similar manner by patting her buttocks on two other occasions during an out-of-state trip when she was sharing a bed with him. L.L. did not tell anyone about these prior incidents. After father's arrest, L.L. told mother about the most recent incident. She was sad because mother did not believe her, even though mother had previously told her to speak up if anything ever made her feel uncomfortable.

According to L.L., her parents frequently argued. Sometimes the arguments became physical and mother and father pushed each other. L.L. said, "What I am living is not safe." She once heard mother slap father during an argument. Another time, she heard mother and father arguing about an incident where father threw keys at mother's stomach, causing mother pain. L.L. stated that father usually drank alcohol on weekends and her parents argued when father was drinking. L.L. felt uncomfortable when her father drank because he used "bad words" and talked to the family like he was "crazy."

Mother told DCFS she was shocked by the sexual abuse allegations and did not believe father was abusing the children. She confirmed that L.L. had text messaged her multiple times on the day of the incident. She did not respond because she was not allowed to use her cellphone at work. Mother interpreted father's conduct toward L.L. as a show of affection, not sexual abuse. However, prior to police and DCFS involvement, mother had considered telling father that they should stop patting each other on the buttocks because someone could perceive it negatively as L.L. was getting older. Mother said that L.L. had never appeared distressed around father and had a strong bond with him.

Mother initially denied any domestic violence, but then admitted she had once slapped father about two or three years earlier. Mother claimed the incident with the keys was an accident, stating that father threw the keys, but she failed to catch them and they hit her in the stomach. She denied that she and father pushed each other. However, she admitted that while the family was living in Guatemala, she and father argued more, and father drank excessively. According to mother, in Guatemala, the parents argued two to three times per week,

4

usually over money, and they called each other derogatory names, but never in L.L.'s presence.  Mother insisted "Guatemala is separate."

Still, mother said her recent arguments with father stemmed from his drinking and she did not like it when father drank.  She reported that on the weekends, father typically drank a six-pack of beer alone in his car.  Mother asked father to stop drinking alcohol so that he could spend more time with the family.   She denied that father's drinking impacted his parenting and said she cared for the children when father was drinking.

Father told a social worker that on the day of the May 2020 incident, L.L. had been watching television and playing on the floor in the back bedroom where K.L. was sleeping.  Father was concerned that L.L. was making too much noise and would wake K.L. so he moved L.L. to the main bedroom.  He admitted that he got on the bed next to L.L., kissed her three times on the cheek, and said, "I love you daughter."  Father then spanked L.L. three times on her buttocks, with an open hand and over her clothes.

Father confirmed that he and L.L. travelled out-of-state together and slept in the same bed throughout the trip.  He said that on two separate nights, he hugged L.L. and told her, "I love you momma," before he spanked her three times, lightly, on her buttocks, over her clothes.  Father described his actions as playful and innocent in nature.  He never sensed that L.L. was uncomfortable.  Father had noticed, however, that L.L. was moodier lately and appeared self-conscious that her body was maturing.  Father observed L.L. trying to hide her developing breasts by hunching her back.

Father denied any domestic violence with mother, but admitted the slapping incident had occurred.  He also said that

the incident with the car keys was an accident. Father confirmed that he and mother pushed each other and argued weekly over money while the family lived in Guatemala. According to father, he and mother yelled or called each other names, but if their verbal disagreements escalated, father would leave the home and go for a walk.

DCFS filed a Welfare and Institutions Code[1] section 300 petition on behalf of L.L. and K.L., under subdivisions (a), (b), (d), and (j), alleging that the children were at serious risk of harm from the parents' domestic violence, father's alcohol abuse, and father's sexual abuse of L.L. The juvenile court found prima facie evidence that L.L. and K.L. were persons described by section 300 and detained them from father. It released the children to mother and granted father monitored visits. The juvenile court also ordered random alcohol testing for father.[2]

At the jurisdictional hearing, the juvenile court admitted DCFS's combined jurisdiction and disposition report, evidence that father arrived for drug testing but could not test because his name was not on the list, and a sign-in sheet showing father had attended eight alcoholics anonymous sessions. After hearing argument, the juvenile court sustained all counts of the petition. The court found the domestic violence was unresolved, recurring, and not a one-time incident. The court also found a nexus

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] At some point before the jurisdictional hearing the parents indicated they were willing to participate in a contract for informal supervision, but only if father was allowed to return to the family home.

between father's ongoing alcohol consumption and the parents' domestic violence, noting the parents' arguments stemmed from father's alcohol use, mother became upset when father drank, and the issue remained unresolved.

In sustaining the sexual abuse counts, the juvenile court noted the record included multiple incidents of a sexual nature. The court found L.L.'s statements to police officers and DCFS were consistent and she demonstrated fear and discomfort with father's actions. She tried to awaken K.L. after the incident, texted mother six times, and when mother did not respond, she told her friend that she was uncomfortable with father's actions, and asked the friend to call the police. The juvenile court disagreed with father that his behavior with L.L. was merely an appropriate display of love and affection. It also found that the conduct was escalating and inferred the requisite intent for sexual abuse from the totality of the circumstances. The court agreed with the children's counsel that father's behavior with the children appeared to constitute grooming for more egregious sexual behavior.

The juvenile court proceeded to disposition. It found clear and convincing evidence that there was a substantial danger and risk of detriment to the children and declared them dependents of the juvenile court. The court removed the children from father and released them to mother, finding that it was premature to release the children to father and that a substantial risk of harm still existed. The juvenile court ordered mother to complete individual counseling to address sexual abuse awareness and appropriate sexual boundaries. It also ordered father to complete a parenting program; individual counseling, including domestic violence for perpetrators and appropriate sexual boundaries; and

7

joint counseling with L.L., contingent on her therapist's advice and recommendations.  The juvenile court also ordered father to complete a full drug and alcohol program with aftercare, including testing every other week.

Mother and father appealed.

## DISCUSSION

I.      Mother's Appeal

Mother's sole argument on appeal is that substantial evidence did not support the juvenile court's finding that she failed to protect the children from father's sexual abuse.  She does not contest the court's other jurisdictional findings related to her, or those based on father's conduct.  She therefore concedes that the juvenile court will retain jurisdiction regardless of the outcome of her appeal.  However, mother urges this court to consider the merits of her appeal.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  Nonetheless, a reviewing court may consider the merits of a parent's challenge when it serves as the basis for dispositional orders that are also challenged on appeal, could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings, or could have consequences for the parent beyond

8

jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

We exercise our discretion here to consider mother's appeal. We note that although the juvenile court did not remove the children from mother's custody, it ordered her to complete individual counseling to address sexual abuse awareness and appropriate sexual boundaries. The juvenile court could have ordered mother to participate in this form of counseling based on the jurisdictional finding that the children were abused or at risk of sexual abuse because of father's conduct. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311–312 [juvenile court not limited to content of sustained petition when making dispositional orders; there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) Yet, this dispositional order may also have flowed from the jurisdictional findings based on mother's failure to protect the children from father's sexual abuse. Under these circumstances, the jurisdictional finding as to mother " 'could potentially impact the current or future dependency proceedings.' " (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) We thus consider mother's arguments.

A.    *Substantial evidence supported the juvenile court's jurisdictional findings as to mother*

The juvenile court may assume jurisdiction over a child when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1).) The juvenile court may also assume jurisdiction over a child

9

when the child has been sexually abused or there is a substantial risk the child will be sexually abused. (§ 300, subd. (d).) This includes when a parent fails to protect a child from sexual abuse and the parent knew or reasonably should have known that the child was in danger of sexual abuse. (*Ibid.*)

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Here, mother knew that father had inappropriately touched L.L. after police confronted mother and L.L. told her about the May 2020 incident. Mother acknowledged that even she had begun to feel that father patting L.L. on the buttocks was not appropriate. Nevertheless, mother did not believe L.L.'s disclosures. She repeatedly defended father's actions as playful or innocent displays of affection. After father was released from police custody, mother welcomed him back into the home and took no steps to protect the children from him. Father continued caring for the children alone.

Only when DCFS became involved and the juvenile court ordered the children detained, and then removed them from father's custody, did mother agree to measures intended to protect the children from father. Substantial evidence supported the juvenile court's jurisdictional finding that mother failed to protect the children from father's sexual abuse. (See *In re D.G.*

10

(2012) 208 Cal.App.4th 1562, 1572–1573 [substantial risk of harm established where mother did not believe father sexually abused daughter, mother refused to address allegations until after DCFS detained the children, and mother would not agree not to allow father unmonitored visits]; *In re S.C.* (2006) 138 Cal.App.4th 396, 415–416 [jurisdiction appropriate where mother did not believe stepfather molested minor and mother allowed stepfather to remain in the home where he could have continued unsupervised access to minor]; *In re Katrina W.* (1994) 31 Cal.App.4th 441, 447 [mother's past conduct in disbelieving father physically abused minor was evidence of risk of future harm to minor].)

II.    Father's Appeal

Father asserts two arguments on appeal.[3]  First, father contends the juvenile court's order removing the children from his custody was not supported by substantial evidence and there were reasonable means short of removal to protect the children. Second, father asserts that the disposition order directing him to engage in a full drug and alcohol program was an abuse of discretion.  We find no error.

---

[3] Father initially also challenged the juvenile court order granting him monitored visitation without specifying the duration and frequency of the visits.  On January 27, 2021, DCFS requested that we take judicial notice of the juvenile court's minute orders entered on January 21, 2021, granting father a minimum of three visits per week for three hours per visit.  The request for judicial notice is granted.  In his reply brief, father concedes his challenge to the juvenile court's visitation order is now moot.

A. *Substantial evidence supported the juvenile court's removal order*

The juvenile court may remove a child from a parent's custody only upon a finding, by clear and convincing evidence, that there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent[ ]."  (§ 361, subd. (c)(1).)  When we are "reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see *In re V.L.* (2020) 54 Cal.App.5th 147, 155 [same standard applies in dependency cases].)

Father contends the evidence was insufficient for removal because his physical confrontations with mother were minor, sporadic, and historical, and neither child was actually harmed or endangered.  He minimizes his alcohol consumption and any risk of harm posed by his drinking.  Father also asserts that removal was inappropriate because the sexual abuse of L.L. was relatively minor and did not endanger K.L.  He further argues that there were services available to prevent removal of the children from his custody because he acknowledged his mistakes and communicated his willingness to change.  Father's arguments are unavailing.

The evidence before the juvenile court established the parents' domestic violence was recurring, unresolved, and had

12

occurred in L.L.'s presence. L.L. reported that she saw or heard mother slap father only two months prior to DCFS's involvement. She also stated that father and mother argued a lot and pushed each other. That other physical confrontations happened in Guatemala several years earlier, and that such incidents continued to occur, reflected a long history of unresolved domestic violence. When describing the parents' confrontations, L.L. told the social worker her living situation was not safe. At least some of the parents' conflict was due to father's regular drinking, which caused the parents to argue, and led father to curse and act "crazy." The juvenile court could reasonably infer that the parents were minimizing the severity of the altercations between them, and the impact father's drinking had on the family.

We further disagree with father's characterization of the sexual abuse as relatively minor and thus insufficient to support the removal of both children. Father had engaged in the same inappropriate behavior with L.L. multiple times. On at least two occasions, he touched L.L.'s buttocks while lying in bed with her. On both occasions, father acted while he and L.L. were alone. During the May 2020 incident, L.L. became very uncomfortable when, while mother was not home and K.L. was asleep, father closed the bedroom blinds and placed L.L. on the bed. Viewing the evidence in the light most favorable to the court's findings, father's touching on that occasion was decidedly sexual. Father placed L.L. on a bed, rubbed her thigh, wrapped her legs around his, and squeezed her buttocks repeatedly. Despite father's claims that this was normal behavior, L.L. said father's actions were odd and frightening, leading her to take refuge in a bathroom where she first texted mother, then confided in a friend who called the police for her.

13

The juvenile court disbelieved father, finding L.L.'s statements consistent and credible. The pattern of incidents supported the juvenile court finding that father's behavior was escalating and could properly be characterized as grooming for further abuse. Moreover, the evidence supported an inference that father's sexualized conduct toward L.L. began with him routinely patting her on the buttocks, that this was couched as a family practice, and that the practice was likely to include K.L.

On this record, a reasonable trier of fact could have found it highly probable that returning the children to father would pose a substantial risk of them being harmed by exposure to future domestic violence, father's abuse of alcohol, and sexual abuse, and also that there were no reasonable means to protect the children without removal from father's custody. (§ 361, subd. (c)(1).) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135–136.)

Throughout the case, father minimized his role in the domestic violence, denied that it had occurred, or claimed it was limited to the family's distant past. Similarly, father minimized the effects his alcohol consumption had on the family and failed to recognize its connection to his confrontations with mother. He also minimized his conduct with L.L., denying its sexual nature and downplaying it as merely acts of affection. Father denied negative consequences of his behavior and refused to participate in programs such as domestic violence counseling without court intervention. Despite father's insistence that he was willing to change, he also stated there was no need to participate in programs to address domestic violence and sexual abuse before

14

ordered to do so. By the time of the disposition hearing, he had only minimally engaged in services to address any of the case issues. (*In re V.L., supra,* 54 Cal.App.5th at pp. 157–158 [willingness to participate in services is conflicting evidence regarding risk parent posed to children; under substantial evidence test it must be disregarded].)

Accordingly, we find substantial evidence supported the juvenile court's removal order.

B.   *The trial court did not abuse its discretion in ordering father to participate in a drug and alcohol program*

Next, father argues that the juvenile court's order directing him to engage in a full drug and alcohol treatment program was an abuse of discretion. We disagree.

A juvenile court may make any reasonable order "to ameliorate the conditions that made the child subject to the court's jurisdiction." (*In re Neil D.* (2007) 155 Cal.App.4th 219, 224.) The juvenile court has broad discretion to determine what would serve a child's interest and to issue dispositional orders accordingly. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) We will not disturb a discretionary decision unless it was arbitrary, capricious, or patently absurd. (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456.)

Here, the juvenile court's order requiring father to participate in a full drug and alcohol treatment program was well within its discretion. Father had a history of alcohol abuse that preceded K.L.'s birth in Guatemala and continued after the family moved to the United States. Although mother claimed father no longer drank to excess, she admitted he regularly consumed a six-pack of beer while sitting alone in his car. Father's alcohol consumption caused arguments between the

15

parents, which led to physical confrontations. Prior to DCFS intervention, father made no effort to stop drinking despite mother asking him to stop. As the juvenile court noted, the drug and alcohol program would teach father how to identify signs of alcohol abuse and the effects of his drinking on the children and family. Contrary to father's assertion, random or on-demand alcohol testing alone would not accomplish those results.

The order for a full drug and alcohol program was within the juvenile court's broad discretion.

## DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED.


ADAMS, J.*


We concur:



EDMON, P. J.



EGERTON, J.

---

*  Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.